


# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

IRVIN ROSE                        :
                                  :
                    Plaintiff,    :       CIV. NO. 3:01CV90 (RNC)(DFM)
                                  :
        vs.                       :
                                  :
JOSEPH GANIM, ET AL               :
                                  :
                    Defendants    :       SEPTEMBER 3, 2002

## INTERROGATORIES AND PRODUCTION

### DEFENDANT'S REQUEST FOR INTERROGATORIES AND PRODUCTION

The Defendants, by and through their attorney, Barbara Brazzel-Massaro, state that the Plaintiff, **Irvin Rose**, is hereby notified to answer, under oath, these Interrogatories, as shown following within thirty (30) days of the time of service upon you, in accordance with the Federal Rules of Civ. Pro. et. seq.  These Interrogatories shall be deemed continuing so as to require supplemental answers if you obtain further information between the time the answers are served and the time of trial.

As used herein, the term "you" means you, yourself, or any of your agents, deputies, assignees, partners or associates.  It is intended by these Interrogatories to elicit information not merely within your own personal knowledge but also which is

BMF02055                          1

obtainable by you, including information in possession of "anyone acting in your behalf", such as your attorney, investigator or their representatives.

Wherever the term "incident" is used, it refers to the incident referred to in your lawsuit unless the sense appears to be to the contrary.

1.      Please state name, address and social security number.

**ANSWER:**


2.      Please provide all addresses for the time period 1995 to the present.

**ANSWER:**



3.      Please provide the name, address, job description and dates of employment for any jobs you had during the time period of January 1, 1995 to the present.

**ANSWER:**



4.      Please provide the names and addresses of all witnesses you claim have any knowledge of the events alleged by you in your complaint.

**ANSWER:**


BMF02055                                        2

5.    Please provide each and every fact upon which you rely for the claim against Mayor Joseph Ganim.

**ANSWER:**

6.    Please provide each and every fact upon which you rely for the claim against Thomas Sweeney.

**ANSWER:**

7.    Please provide the name, address and field of expertise of any expert you have consulted or intend to use for the trial of this matter.

**ANSWER:**

8.    Please indicate what relationship, if any, you have with Nicolas Stevens of Fairfield, Connecticut.

**ANSWER:**

BMF02055

9.     Please provide the name of each Bridgeport police officers you came into contact with at the Bridgeport Police Department regarding this incident.

**ANSWER:**


10.     Please indicate the specific facts upon which you rely on your claims against Police Officer Torres.

**ANSWER:**


11.     Prior to January 11, 1998, had you ever met or had contact with Police Officer Torres?

**ANSWER:**


12.     Please indicate the specific facts upon which you rely on your claims against Police Officer Perez.

**ANSWER:**

BMF02055                                        4

13.    Prior to January 11, 1998, had you ever met or had contact with Police Officer

Perez?

      <u>**ANSWER:**</u>

**<u>PRODUCTION REQUEST</u>**

1.    Please provide all receipts or documents regarding the mailing or initiation of your complaint in this matter.


2.    Please provide a copy of any policy or regulation you contend was violated by Defendants Ganim, Sweeney, Perez and Torres.


3.    Please provide a copy of any written statements made or received by Plaintiff concerning the subject of this action.


4.    Please provide a copy of any bills, expenses or other costs Plaintiff contends were the result of the claims in his complaint.


5.    Please provide a copy of the final court disposition of this matter.


6.    Please provide a copy of the registration and insurance card for the automobile you were driving on January 11, 1998.

THE DEFENDANTS

By: _____
Barbara Brazzel-Massaro
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street - 2nd Floor
Bridgeport, CT  06604
Telephone #203/576-7647
Fed. Bar No. 05746

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 3rd day of September, 2002, to:

**Irvin Rose #78123**
**Northern Correctional Institution**
**287 Bilton Road**
**P.O. Box 665**
**Somers, CT  06071**

_____
Barbara Brazzel-Massaro
Commissioner of the Superior Court

BMF02055



# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

IRVIN ROSE                         :
                                   :        **PRISONER**
                    **Plaintiff,**        :        **CIV. NO. 3:01CV90 (RNC)(DFM)**
                                   :
          **vs.**                        :
                                   :
**JOSEPH GANIM, ET AL**              :
                                   :
                    **Defendants**        :        **MARCH 17, 2003**

### MEMORANDUM OF LAW IN SUPPORT
### OF MOTION FOR SUMMARY JUDGMENT

### I.    BACKGROUND

The instant matter was instituted by way of a Complaint dated January 6, 2001 and filed in the Clerk's office on or about January 17, 2001. There is no documentation as to the date when the documents were provided to prison officials for mailing. The Plaintiff filed this action pro se. The Complaint sets forth claims of false arrest, malicious prosecution, false incarceration, intentional infliction of emotional distress, and state law claims of negligence because there was no probable cause for his arrest as to the individual police officers. The Plaintiff alleges that the Mayor, Joseph Ganim, and the Chief of Police, Thomas Sweeney, failed to supervisor or train the Defendant police officers.

BMF03014                                    1

## II.    **FACTS**

On January 17, 1998, the Defendants, Perez and Torres, were police officers in the City of Bridgeport. On this date, they had a special assignment of community policing in an area called Marina Village. This area is a public housing project located within the City of Bridgeport. One of the purposes of additional officers in this area was the large number of complaints and arrests because of the high volume of drug sales.

On this morning, Officers Perez and Torres were patrolling the area when they saw a car driven by Mr. Rose stop outside of Building 31. Mr. Rose exited and walked to an area behind the building. When Mr. Rose began to return to the area where his car was parked, the officers were there with a marked police car. Instead of proceeding to his car, Mr. Rose turned around and walked back to the building area. The officers went around the building and, upon seeing him, they approached and identified themselves.

Mr. Rose, who was now with a woman identified as Beverly Williams, provided the officers with a false name ("William Johnson" – Exhibit "A"). He gave an address that was not part of the housing complex. Upon discussion with Mr. Rose, the officers learned he was operating the car without a drivers license, without proper registration, and without insurance. The officers then learned the license

plates on the automobile were stolen.  Upon learning this, the officers placed Mr. Rose under arrest (Exhibit "B").

In conjunction with the decision to arrest, the officers conducted a search of Mr. Rose's person and prepared to handcuff him.  In doing this search, the officers discovered an envelope with a white power substance.  The ingredients of the envelope were tested and traces of heroin were found.  Mr. Rose was also charged with possession of narcotics as a result of this discovery (Exhibit "B").

The Plaintiff alleges that after seven months, the case was dismissed. However, the Plaintiff has never produced the Court documents to prove if the charges were dismissed and, if so, how, when and under what circumstances the charges were dismissed.

## III.    ARGUMENT

### A.    Standard for Summary Judgment

A party is entitled to summary judgment in his favor if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Lujan v. National Wildlife Federation, 497 U.S. 871, 883, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American Int'l Group, Inc. v. London

American Int'l Corp., 664 F.2d 348, 351 (2nd Cir. 1981). In determining whether a genuine factual issue exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty, 477 U.S. 242, 255 (1986). When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Lugan, supra. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Lugan. The prima facie burden is discharged by pointing out to the Court an absence of evidence in support of the non-moving party's claim. The burden then shifts to the non-moving party to show, by affidavit or otherwise, that a genuine issue of material fact remains for the fact finder to resolve. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

In the instant action, the Plaintiff, although pro se, has failed to respond to discovery or offer in the course of this action any supporting documentation or evidence that would raise a genuine issue of fact for this Court.

Therefore, in accordance with the law, and the facts set forth below, a Summary Judgment should be granted as to all Defendants.

**B.**   **The Plaintiff Has Failed to Satisfy His Burden That The Action Was Filed Within The Statute Of Limitations**

By motion dated September 12, 2001, the Defendants requested that the Court dismiss the Complaint for failure to file the civil rights action within the applicable statute of limitations. There is a three year limitation for §1983 action in accordance with the case law. Wilber v. Amendola, 635 F. Supp. 1527 (D. Conn. 1985, Cabranes, J.);  DiVerniero v. Murphy, 635 F. Supp. 1531 (D. Conn. 1986, Burns, J.). In re State Police Litigation, 888 F. Supp. 1235 (D. Conn. 1995).

The Complaint by Mr. Rose is based upon an arrest on or about January 11, 1998. The Complaint was not filed on or before January 11, 2001. It appears that the action was not filed in the Federal Court until January 17, 2001. The Court, in its ruling denying the Motion to Dismiss on this basis, indicated that the Plaintiff, filing pro se, may be able to prove that the Complaint was delivered to the prison officials for filing by January 11, 2002. The Defendants, in response to the Court's ruling, propounded Interrogatories and Production to the Plaintiff on September 3, 2002. They specifically requested documentation as to the issue of filing (Exhibit "C").  In particular, the Defendants requested that Plaintiff "provide all receipts or documents regarding the mailing or initiation of your complaint in this matter." The Plaintiff has not responded to this production request although several attempts were made. There is presently pending a Motion for Compliance as to this

BMF03014

5

failure.   Without sufficient documentation as to the filing of any court action, the complaint should be dismissed.

### C.    The Plaintiff's Arrest Was Based Upon Probable Cause

In order for the Plaintiff to succeed on the federal causes of action for false arrest, malicious prosecution and the state claims for false arrest, the Court must determine that Police Officer Perez and Police Officer Torres did not have probable cause for Mr. Rose's arrest on January 11, 1998.   There can be no federal civil rights claim for false arrest where the arresting officer had probable cause. Weyant v. Okst, 101 F.3d 845, 852 (2nd Cir. 1996).   The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.   Bernard v. United States, 25 F.3d 98, 102 (2nd Cir. 1994).

In the instant action the facts at the time, as set forth in the police report and as stated in the affidavit of Officer Perez, indicate that the car operated by Mr. Rose had no insurance or registration and that the license plate was stolen (Exhibits "A" and "B").   These violations supported the probable cause for the arrest and subsequent search that led to the discovery of the narcotics (Connecticut General Statutes §14-147a, §38-327d, §14-36(a), and §14-12(a)).

Based simply on the uncontroverted affidavit outlining the facts and circumstances known to the officers there is more than sufficient probable cause for each and every charge against Mr. Rose.   Even if all of the charges were dismissed

BMF03014                                          6

for some unexplained reason, the officers have no liability if the facts viewed at the moment of arrest provided probable cause.  However, it is the Plaintiff's burden in order to maintain a §1983 action or a pendent state claim in false arrest to demonstrate that the criminal proceeding at issue was terminated in his favor. Singleton v. City of New York, 632 F.2d 185, 194-95 (2nd Cir. 1980) cert. denied, 450 U.S. 920 (1981);  Konan v. Fornal, 612 F. Supp. 68, 69-70 (D. Conn. 1985).  Without knowledge of the specifics of the Plaintiff's charges (i.e. conditions compromised) the Plaintiff has failed to satisfy his burden.

Officer Perez indicates in his affidavit a litany of facts that led to the arrest of Mr. Rose on that morning in January.  The officer's conduct demonstrates that he was consistently inquiring but giving the benefit of the doubt to Mr. Rose. The action or inaction of not immediately arresting is consistent with a finding that the officers acted reasonably.  Look at what was occurring at the time, there was an accumulation of illegal acts from a misdemeanor up to the more serious felony offenses which required that these officers doing their job arrest Mr. Rose.  The officers were assigned to this area because there was a high volume of drug sales (Exhibit "B").  This arrest occurred in the middle of winter, not a time that people normally have socials in the park.  Neither Mr. Rose nor the car he had parked were familiar to these officers.  In fact, shortly thereafter, it was discovered that Mr. Rose did not live in that housing complex.  Mr. Rose did not go to any particular apartment

in the building complexes, but simply approached a few people who were outside. When the police officers approached, Mr. Rose abruptly turned away and, in their eyes, attempted to evade them (Exhibit "B"). This evasive action was not enough for probable cause, but did draw their attention to him. So instead of being honest and offering positive identification, Mr. Rose gave a false name and could not show registration or insurance for the car he drove to the complex. On top of this, while waiting, the officers learned that the license plates on the car he admitted belonged to him were stolen (Exhibit "B"). At this juncture the officers were wise to take him into custody and had probable cause to charge him with a number of criminal acts.

Probable cause existed at this stage because the officers had "knowledge or trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Golino v. City of New Haven, 950 F.2d 864, 870 (2nd Cir. 1991) citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979). Under Connecticut state law, probable cause comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. State v. Barton, 594 A.2d 917, 928 (Conn. 1991). A probable cause standard is "less demanding than that which attends an inquiry into whether there has been a prima facie showing of criminal activity. State v. Heinz, 480 H.2d 452, 456 (Conn. 1984). Lastly, the police officers discovered narcotics (heroin) in

the Plaintiff's pocket as they were searching him incident to arrest. The Plaintiff so much as admits this in his Complaint when he states: "The other officer arrested me went inside my pockets and found a bag of heroin." (Claim II, page 2.)

Given the overwhelming supporting facts for arrest and the Plaintiff's own admission in his pleadings that he didn't have a license, insurance or registration, as well as he possessed the heroin, it is impossible to find there was not probable cause.

> **D.** **The Claims Against Joseph Ganim And Thomas Sweeney Are Not Support By Any Evidence.**

Within the Plaintiff's Complaint he states as to the Mayor, Joseph Ganim (hereinafter "Ganim") and the Chief of Police, Thomas Sweeney (hereinafter "Sweeney") that "Mayor Ganim is characterized as the City of Bridgeport and responseable (sic) for protecting the citizens and their rights against the acts of his employed subordinates and the operations (sic) of their facilities. Police Chief Sweeney is the Mayor's subordinate, and characterized as the Police Department and responseable (sic)for supervising and training of his police officers. He is the overseer of the facility and responseable (sic) for how it is operated by everyone whom is an employee. Both individuals are being sued for their negligence of not ensuring the protection of individuals whom are in contact of their employees." (Plaintiff's Complaint, Claim 1). This is the sole paragraph addressed to the alleged liability of Ganim and Sweeney. The allegations can rightly be classified as general.

BMF03014                                                9

Plaintiff has failed to clarify any specific action or non-action of either Defendant which would rise to the level of a cognizable action.

The Plaintiff has not named as a Defendant the City of Bridgeport and, therefore, his theory of liability is not the execution of a municipal policy, practice or custom pursuant to Monell v. New York City Department of Social Service, 436 U.S. 658, 690-91, 694 (1978).

It is not disputed that at the time of the arrest of Mr. Rose that Joseph Ganim was the Mayor of the City of Bridgeport and Thomas Sweeney was the Chief of Police of the Bridgeport Police Department. Simply because the Mayor and Chief have some positions of authority, it does not necessarily imply that they are liable based upon respondeat-superior, that is a master-servant relationship. In fact, the courts have even found that supervisory police officers are not the employees of the subordinate officers. The Chief of Police, the Mayor and the line officers are, in reality, fellow servants of the same master, the municipality that employs them. McKinnon v. City of Berwyn, 750 F.2d 1383, 1390 (7th Cir. 1984), Santiago v. City of Philadelphia, 435 F. Supp. 136 (E.D. Pa. 177).

Other than the general assertions that these individuals were the department heads or failed to supervise and train the Defendant officers, there are absolutely no facts that would support the Plaintiff's claim. The Defendants requested the specific facts upon which the Plaintiff based these allegations in the Interrogatories and

Production dated September 3, 2002 (Exhibit "C" - Interrogatory numbers 4, 5 and 6 and Production Request number 2). The Plaintiff has failed to respond in any way to this discovery. Therefore, to date, the only allegation is that they were employed in the City and Police Department.

There is no allegation that either Ganim or Sweeney were at the scene when the Plaintiff was arrested, nor for that matter that either knew about the arrest of the Plaintiff before filing this legal action. In order to find any liability on the part of either Defendant, the Plaintiff must prove that (1) the supervisor, after learning of the violation, failed to remedy the wrong; (2) the official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event. Spencer v. Doe, 139 F.3d 107, 112 (2nd Cir. 1998). Additionally, a single incident or a series of isolated incidents is not a sufficient basis upon which to find supervisory liability. Meriwether v. Coughlin, 879 F.2d 1037 (2nd Cir. 1989).

In the instant action there is no testimony or evidence that demonstrates (1) either Ganim or Sweeney were aware of the arrest; (2) that either were aware of false arrests by the officers who arrested Mr. Rose; (3) that either were aware of any past improper conduct on the part of Officers Perez or Torres that would contribute to the arrest of Mr. Rose; or (4) that either would even believe this was an

improper arrest because the officers provided abundant probable cause for the arrest of Mr. Rose. The Plaintiff has not offered any factual basis to link between this arrest, the arresting officers and the Chief or Mayor. Because of the sheer conjecture of this Plaintiff, there is no cognizable cause of action for failure to supervise.

Likewise, the claim of failure to train is equally lacking in any supporting documentation. The law regarding a claim of failure to train requires that the Plaintiff demonstrate that there was a deliberate indifference or a recklessness regarding training. City of Canton v. Harris, 459 U.S. 378 (1989). Deliberate indifference is demonstrated when police violate constitutional right so often in exercising their discretion that the need for further training must have been plainly obvious to the City. Merely alleging that the City failed to train its employees properly is insufficient to establish a custom or policy of violating civil rights because of improper training.

In the instant action, the Plaintiff uses the phrase failed to train, but does not offer, in the Complaint or in ongoing discovery, what training or how the Defendants should be aware of such an obvious deficiency. In fact, the City of Bridgeport Police Department complies with the required training in the State of Connecticut for new officers as well as ongoing training for veteran officers (Exhibit "D" - Affidavit of Lt. Viadero). Given the nature and extent of training, and no obvious deficiencies, this claim must also fail.

**E.**   **The Individual Defendants Are Entitled To Qualified Immunity**

Assuming, arguendo, that the Plaintiff is able to satisfy his burden that there is a genuine issue of fact regarding the arrest by Perez and Torres, or the failure to supervise/train as to Ganim and Sweeney, each would be entitled to a finding of qualified immunity as set forth below.

**1.**   **Qualified Immunity for Perez and Torres**

In Anderson v. Creighton, 483 U.S. 635, 107 S. Ct. 3034 (1987) the Supreme Court held that when governmental officials perform discretionary functions, they are provided with a qualified immunity.  This qualified immunity shields the police officials from civil damage liability as long as their actions  could reasonably have been thought to be consistent with the rights they are alleged the have violated.   The same court, in Malley v. Briggs, 475 U.S. 335 (1986) had found that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

Whether an official protected by qualified immunity may be held personally responsible for an allegedly unlawful official action turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time the action was taken.  In the light of the pre-existing law, the unlawfulness must be apparent.  The instant action demonstrates that the

arrest and later detention of Irvin Rose was based upon probable cause, was not intentional, willful or malicious and was, therefore, lawful.

The Supreme Court has recognized that it is inevitable that law enforcement officials will, in some cases, reasonably but mistakenly, conclude that probable cause is present <u>Anderson v. Creighton</u>, supra at 641.[1]  They have indicated that in these cases the mistaken officials, like officials who act in ways they reasonably believe to be lawful, should not be held personally liable.  The relevant question is whether a reasonable officer could have believed that taking the action was lawful in light of clearly established law and the information the officer possessed at the time the action was taken.   In furtherance of this standard, unanimity of opinion as to the existence of probable cause is not required, even assuming it to be attainable.  Police officers must be encouraged, not discouraged, in the lawful performance of their duties, even where the true state of the facts and the existence of probable cause may be somewhat unclear.  This reality has been expressly recognized by the Court and incorporated into the "shield" of qualified immunity:   "if officers of reasonable competence could disagree on this issue, immunity should be recognized."  <u>Malley</u>, supra at 341;  <u>Golino v. City of New</u>

---

[1] In the instant action, the Defendants do continue to contend that this arrest was based upon probable cause and, therefore, the arrest was not a mistake.

Haven, 950 F.2d 864 (2nd Cir. 1991); Cartier v. Lussier, 955 F.2d 841, 843-44 (2nd Cir. 1992), Salim v.Proulix, 93F. 3d 86 (2nd Cir. 1996).

In order to defeat qualified immunity, the Plaintiff is required to demonstrate that it would have been apparent to a reasonable officer that no probable cause existed for the Plaintiff's arrest. *Anderson*, supra at 3039, Malley, supra.

The Court in Magnotti v. Kuntz, 918 F.2d 364 (1990) found that the question of qualified immunity is distinct from the question of probable cause. "The evidence might be insufficient to sustain a finding of probable cause...yet be adequate for the judge to conclude it was reasonable for the [police officer] to believe he had a good basis for his action." Id. "For the purpose of determining the lawfulness of an arrest, probable cause encompasses only that information available to the arresting official prior to and including the point of seizure." Warren v. Dwyer, 906 F.2d 70, 73 (1990). The question is not whether probable cause existed, but whether a reasonable officer possessing the same particularized information as was available to Officers Perez and Torres could have believed that their conduct was lawful and then qualified immunity applies. McLenagan v. Karnes, 27 F.3d 1002, 1007 (4th Cir. 1994).

Thus a defense of Qualified Immunity will only be defeated if the official knew or should have known that his actions, taken within the sphere of official

BMF03014                              15

responsibility, would violate the constitutional rights of the plaintiff or if he took the action with the malicious intent to cause a deprivation of constitutional rights. Harlow v. Fitzgerald, supra at 815.

"The facts and circumstances of each case must be examined to determine whether the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates the right. In the light of pre-existing law the unlawfulness must be apparent." Finnegan v. Fountain, supra at 823.

The facts and circumstances of the instant action support a finding by this court of qualified immunity. The only allegation that the Plaintiff has made regarding the arrest by these officers is that they did not have probable cause. However, the Plaintiff has never provided evidence of an operators license, insurance and/or car registration that was provided by him. Although his Complaint seems to admit these offenses, these times were never available. So, too, how would the police have such precise information about a stolen license plate if the entire matter was lacking in supporting information for the arrest (See Exhibit "A" – Police Report). The officers actually found material which tested positive for heroin and the Plaintiff does not deny this finding

The Plaintiff was apparently incarcerated for some period of time relating to these charges because he discusses a "seven month" period of time. If

BMF03014                                16

this was so, then there is further support for the arrest of the Plaintiff by these officers because the Plaintiff would have been in court for a probable cause finding and possibly pre-trials. Any review by the court during this time would be supportive of the arrest since the charges continued even with court intervention. There is no evidence to refute these findings. All of the actions of the officers support a finding for qualified immunity.

### 2.    Immunity is Appropriate for the Chief and Mayor

Again, the Plaintiff claims that both the Mayor and Chief, in their roles as supervisors, are liable. Assuming, arguendo, the Plaintiff has proven that there is a genuine issue of fact as to Ganim or Sweeney in the claim of a failure to supervise or train, the Defendants are entitled, based on the instant facts, to judgment because they have qualified immunity. As stated above, the Court can determine that the Defendants satisfy the two prong test for immunity. The Plaint cannot demonstrate that there was any clearly established right to have direct supervision concerning every arrest. Additionally, the Plaintiff cannot overcome the burden of the objective reasonableness of the supervisory duties of the Mayor and Sweeney in which they provided leadership but no indication of a lack of supervision. There is no regulation, policy or guideline for either the Mayor or Chief that would require responsibility for every arrest within the City of Bridgeport.

In accordance with <u>Poe v. Leonard</u>, 2002 U.S. App. Lexis 2530 (2nd Cir. Feb. 15, 2002), the court stated that it was the responsibility of the plaintiff to show that the laws were clearly established to lay predicate for demonstrating that the defendant was not entitled to qualified immunity. A supervisor, such as Chief Sweeney, may not be held liable unless both the legal theory that a law was violated by the employee, and the supervisory liability, has been established. See <u>Poe v. Leonard</u> at page 14.

In <u>Poe</u>, the court clearly holds that there must be an evaluation of the harm inflicted and the individual responsibility of the accused public official, both the <u>subordinates and the supervisors</u> action (or lack thereof) are relevant. In the instant action, there is no named subordinate, but only the Chief of Police named as an individual defendant. A supervisor may not be held liable under §1983 merely because his subordinate committed a constitutional tort. <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2nd Cir. 1999).

In the present action, as noted above, there is not a scintilla of evidence that Chief Sweeney or Mayor Ganim were aware of the arrest.

The Court has instructed that the right allegedly violated must be defined in a more particularized and hence more relevant sense. The contours of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right.  In light of the pre-existing law, the unlawfulness must be apparent.  In the instant action, this first element has not been satisfied.

Likewise, the second prong of the test supports the finding that Chief Sweeney and Mayor Ganim are entitled to qualified immunity in this case.  The Court has found that "if the actions of Chief Sweeney or Mayor Ganim were objectively reasonable" they are entitled to immunity.  Anderson v. Creighton, 483 U.S. 635, 107 S. Ct. 3034 (1987).  The test recognized by this Circuit is that to be held personally responsible for an allegedly unlawful official action, the objective legal reasonableness of the action must be assessed in the light of the legal rules that were clearly established at the time the action was taken.  In light of the pre-existing law, the unlawfulness must be apparent.  The court, in Siegert v. Silley, 111 S. Ct. 1789 (1991) held that once a defendant raises qualified immunity defenses, the plaintiff has the burden of showing the violation of a clearly established right.  Once the moving party has carried its burden under Federal Rule 56, the opponent must do more than show there is some metaphysical doubt as to material facts.  Matsushita Electric Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

Summary Judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.  Rivera-Cotto-Rivera, 38 F.3d 611, 613 (1st Cir. 1994).

Given the facts of this action, judgment should be granted as to Ganim and Sweeney based on their qualified immunity.

**F.     Plaintiff Has No Facts To Support A Claim For Intentional Infliction of Emotional Distress**

In order to succeed on a claim of intentional infliction of emotional distress, the Plaintiff must prove that the Defendants:  (1) intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his/her conduct;  (2) that the conduct was extreme and outrageous;  (3) that the conduct was the cause of the Plaintiff's distress;  and (4) the emotional distress sustained by the Plaintiff was severe. *Petyon v. Ellis*, 200 Conn. 243, 253 (1986); *DeLaurentis v. City of New Haven*, 200 Conn. 225, 226-27 (1991).

The issue of whether the Defendant's conduct rises to the level of extreme and outrageous behavior is a question of law to be decided by the Court.  In fact, the standard in determining intentional infliction is extremely high.  "Liability has been found only where the conduct has been outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious to utterly intolerable in a civilized community.  *Melley*, supra at 20, quoting Restatement (Second) Torts 4, comment (d).

In the present action, the Plaintiff makes a bare allegation of emotional distress but provides nothing to support such a claim.  There is no treatment for

emotional distress nor any evidence to support the claim.  Summary Judgment is warranted.

THE DEFENDANTS

By: *Barbara B. Massaro*

Barbara Brazzel-Massaro
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street - 2nd Floor
Bridgeport, CT  06604
Tel: #203/576-7647
Fed. Bar #05746

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 17th day of March, 2003, to:

**Irvin Rose #78123**
**Northern Correctional Institution**
**287 Bilton Road**
**P.O. Box 665**
**Somers, CT  06071**

*Barbara B. Massaro*

Barbara Brazzel-Massaro
Commissioner of the Superior Court

BMF03014

21

EXHIBIT

A

DEPARTMENT OF POLICE
BRIDGEPORT, CONNECTICUT

INCIDENT REPORT

☐ UNFOUNDED    ☐ ARREST    ☐ INACTIVE
☐ OPEN    ☐ CLOSED    ☐ CLEARED
☐ WARRANT ADVISED    APPROVED:

| CIDENT NUMBER | 2. INVESTIGATIVE CASE NO. | 3. TYPE OF CRIME / INCIDENT | | 4. CODE(S) |
|---|---|---|---|---|
| 8-0111-079 | | Stolen Plate/ Narcotics Violation | | 4104/1601 |

| PATCHED | M: D: Y: T: | 7. TIME OF OCCURENCE | M: 01 D: 11 Y: 98 T: 1105 | 8. DISPATCHED TO: |
| CENE | M: D: Y: T: | | | |

| OCATION OF CRIME / INCIDENT: Marina Village ,Bldg.31, Ridge Ave. | 10. TYPE OF PREMISE: Housing Project | 11. SECTOR Blue | 12. DEPT. AREA Blue 16 |

| 14. VICTIM'S NAME (LAST, FIRST, MIDDLE) | 15. VICTIM'S COMPLETE ADDRESS | 16. HOME TELEPHONE |
| | | 17. BUSINESS/SCHOOL TELEPHONE |

| ge 19. Date of Birth | 20. Race | 21. Sex | 22. SSN. | 23. Place of Employment/School Attending (Complete Address) |

| Victim Injured ☐ Yes ☐ No | 25. Nature of Injury(s) | 26. Hospital | Admitted? ☐ Yes ☐ No | 27. Attending Physician |

Indicate with proper codes in boxes provided persons relationship to investigation: (V2) Victim #2 (W1) Witness #1, (W2) Witness #2,
(R) Reporting Person, (D) Discover, (PK) Person Knowledgeable, (PC) Person Canvassed
Indicate also if appropriate: (NI) Not Interviewed; or (X) Provided no viable information.

| Individual's Name | 30. DOB/Age | 31. Address/Address Checked | 32. Telephone Numbers | |
|---|---|---|---|---|
| /O M.Perez | | 300 Congress St. Bpt. Ct. | (H) | (B/S) 576-7707 |
| /O P.Torres | | 300 Congress St. Bpt. Ct. | (H) | (B/S) 576-7707 |
| | | | (H) | (B/S) |
| | | | (H) | (B/S) |
| | | | (H) | (B/S) |

| Indicate Who Can Identify Suspect | (R) Reporting Person, (D) Discoverer, (V1) Victim #1, | (W1) Witness #1, (PK) Person Knowledgeable Etc. |
|---|---|---|
| Suspect #1 Name (Name - Include Any AKA Info) rvin Rose | Suspect #2 (Name - Include Any AKA Info) | Suspect #3 (Name - Include Any AKA Info) |
| Suspect #1 May Be Located At 27 Bradley St. Bpt. Ct. | Suspect #2 May Be Located At | Suspect #3 May Be Located At |
| Suspect #1 Description ight skin blk.male,5'8", 60lbs,blue eyes,brn.hair, ..ed built, SS#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 10-21-57 | Suspect #2 Description | Suspect #3 Description |

| | 37. Arrested ☑ Yes ☐ No | | Arrested ☐ Yes ☐ No | | Arrested ☐ Yes ☐ No |

| Vehicle Status ☐ Stolen ☐ Recovered ☐ Suspect ☐ Target | 39. Make/Model Buick Regal | 40. Year 1983 | 41. Type 4dr | 42. Colors (Top/Bottom) Blue | 43. Identifying Characteristics |

| License Plate No. C T 9 0 7 K V X | State | Year | Type | 45. VIN/Bicycle Serial Number 1G4J169AXDH892597 | 46. Alarm/NCIC No. | 47. Loss Value | 48. Revd. Val. |
| egistration | | | | | | | |

| Type of Property Taken/Damaged | 50. Property Description & Identifying Information | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| Point of Illegal Entry/Means of Attack | 52. Type of Instrument/Weapon (Describe) | 53. Loss Total | 54. Revd. Tot |

Narrative: Summarize Details of Crime, Including Progression of Events, Names of other Officers or Units Assisting on Scene.
or any additional information which is an Extension of any of the above blocks. Indicate Block Number at left.

ck #

**On this date reporting officers were assigned to The South End Community Policing Post. Due to the many complaints from the citizens of Marina Village Housing Project of illegal drug activity we have been monitoring this area in an attempt to identify both drug dealers and users. At approx.1100hrs; I P/O M.Perez observed above susp. operating a 1983,Buick,Regal,4dr,Blue,Ct.Reg.907KVX, west on Ridge Ave. Subject parked his veh. in front of Marina Village Bldg.31 and walked to the rear of Bldg.31 This area is known for its high volume of illegal drug sells. Moments thereafter I saw Subject walking back to his veh. but upon seen our marked police car he stopped**

| sical Evidence ☐ Yes ☐ No | 57. Property Receipt No. | 58. Related Incident Nos. | 59. Related Arrest Nos. | 60. Related Casualty Nos. |

| Reporting Officer(s) /O M.Perez /O P.Torres | CAD# 427 530 | Sect. SE | 62. Required Follow-up/Recommendations Prosecutors Office | Page 1 of 2 |
| | | 63. Supervisor Review | Concur | |

# DEPARTMENT OF POLICE
## BRIDGEPORT, CONNECTICUT

# SUPPLEMENTAL REPORT

STATUS CHANGE _____

| | UCR | III | IV |
|---|---|---|---|
| | | V | VI |

APPROVED _____

REPORT TYPE: ( X ) NARRATIVE CONTINUATION ( ) ADDITIONAL INFORMATION ( ) INVESTIGATIVE PROGRESS ( ) CLEAR UP/RECOVERED PROPERTY

| OFFENSE / INCIDENT | 3. LOCATION OF OFFENSE ( House No. and Street) |
|---|---|
| Stolen Plates,MV Violations,Narcotics | Marina Village,Bldg.31,  Ridge Ave. |

| VICTIMS NAME (Last, First, Middle)  (If Firm, Name) | 5. DATE OF OCCURRENCE | 7. INCIDENT NO. |
|---|---|---|
| | Jan.11,1998. | 98-0111-079 |
| | 6. VICTIM'S ADDRESS | 8. INVESTIGATIVE CASE NO. |

BLOCK #

| | |
|---|---|
| turned back and beggan to walk away. We circle back and observed subject talking | A |
| to a blk female who was later identified as Beverly R. Williams of 190 Cottage St. | B |
| DOB 07-26-62. Both P/O Torres and I exited our police veh. and walked over to | |
| both parties who were standing at the corner of Bldg.31. We identified ourselves | C |
| and told both subject our purpose there. The blk.male first identified himself | D |
| as "Wilber Jackson" of 127 Bradley St. Bpt.,Ct. DOB10-21-57. He did not have | |
| proper identification on him. When he was asked if the veh. he was operating was | E |
| registered to him , he replied "YES". I P/O M.Perez asked subject if he had a | F |
| valid operators license which he replied "NO". At this time I informed subject | |
| that I would give him a verbal warning for unlicense operation of a motor veh. | G |
| if he could produce a valid registration and insurance card. He could not produce | H |
| either. I informed subject that he was going to be charged with several motor | |
| veh. violation and his veh. would have to be towed for safekeeping.I requested | I |
| motor veh.info on Ct.Reg.907KVX with our CAD center. The plate came back as stolen | J |
| out of Fairfield ,Ct. On Dec.24,1997. Upon learning that the plate was stolen I | |
| placed subject under arrest. He was cuffed and searched . P/O P. Torres found | K |
| a small glassine envelope marked MERACLE and a logo of a body builder flexing his | L |
| muscles in subjects left rear pants pocket. I P/O M.Perez asked Miss Williams | |
| how long she has known subject ,she replied I have known IRVIN for a long time. | M |
| I then asked her for IRVINS last name which she gave as ROSE. While inventoring | N |
| the glove compartment of the veh. I found an infraction dated 12-22-97 #G179302-4 | |
| issued to Irvin Rose DOB 12-22-97 of 127 Bradley St. at this time subject told | O |
| me that he had given me a wrong name and that his real name was Irvin Rose. | P |
| Mr.Rose was transported to booking by us as P/O Kemesa B11 waited for the tow | |
| truck. His veh. was towed to Family Garage. While in  booking P/O Torres tested | Q |
| the contents of the glassine envelope which contained a wht.powder substance | R |
| with narcotics test #2 Opium Alkaloids(Marquis Reagent)it tested possitive for | |
| traces of Heroin. | S |
| Mr. Irvin Rose was charged with operating Unreg.m/v 14-12(a),No Ops.Lic.14-36(a), | T |
| Theft Of Plates 14-147(a) and No Ins.38-321d . He was also charged with Poss. | |
| Of Narc.21-279a , Total bond $2000.00 | U |
| ... evidence was turned into property room. Note: Ct.Reg. 907KVX was reg.to | V |
| Niccias Stevens of 80 Mellowbrook Rd. Ffld. Ct. on a 85.Caddy.4dr.Blk. | |
| | W |
| | X |
| | Y |
| | Z |
| | AA |
| | BB |

| REPORTING OFFICER | CAD NO. | 10. DATE REPORT PREPARED | | |
|---|---|---|---|---|
| P/O M.Perez | 427 | 01-11-98 | PAGE 2 | OF 2 |
| P/O P.Torres | 530 | | | |
| 11. SUPERVISOR'S REVIEW | CAD NO. | | | |

S63

( ) CONCUR   RECOMMEND _____



**EXHIBIT**

**B**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

IRVIN ROSE                           :
                                     :     **PRISONER**
                    **Plaintiff,**    :     **CIV. NO. 3:01CV90 (RNC)(DFM)**
                                     :
         **vs.**                      :
                                     :
JOSEPH GANIM, ET AL                  :
                                     :
                    **Defendants**    :     **FEBRUARY 4, 2003**

### <u>AFFIDAVIT</u>

I, Miguel Perez, being duly sworn hereby depose and say:

1.      I am over the age of eighteen and believe in the obligation of an oath.

2.      I am employed by the City of Bridgeport as a Police Officer and have been employed in this capacity since May, 1985.

3.      In January, 1998 I was assigned to a special patrol known as Community Policing or Community Service in which I patrolled the South End of Bridgeport and, in particular, the Housing Complex known as Marina Village.  During this assignment I wore the approved Bridgeport Police uniform and was assigned to a marked police car.

4.      The main objective of this special assignment was to address the high drug problem in certain areas in Bridgeport such as Marina Village in the South End.

5.    In this effort, I would patrol the area of Marina Village to create a presence and also become familiar with the areas and the residents.

6.    I patrolled the Marina Village area for the month of January, 1998 and continuing until October of 1998.

7.    On January 11, 1998 I was patrolling with Police Officer Torres.  During our patrol, I saw a gentleman stop his car, exit, and approach several people in the courtyard area of Marina Village.  I did not recognize the gentleman as someone I had seen in the Village nor did I recognize the car he was driving as one that may have been parked in the complex before.

8.    Based upon my training and experience, not only at Marina Village but from many years of patrol experience in Bridgeport, I believed this man may have been involved in a drug transaction.

9.    My belief was further compounded or heightened when Mr. Rose tried to avoid me as I approached by walking away from me, providing me with a false name, failing to provide insurance, registration, operators license, or other proper documentation concerning the car he had driven to Marina Village.  I later learned his name from an infraction ticket in the car.

10.    After getting no information from this gentleman, I received a report from the dispatcher that the license plate number on Mr. Rose's car that I had called in to the

dispatcher was stolen. I immediately place him under arrest for all of the criminal violations at this time.

11.     Upon handcuffing and searching Mr. Rose, as part of the arrest procedure< we discovered an envelope in his pocket. This envelope appeared to be narcotics because of its packaging and based upon my training and experience. It was later tested. It was found to be positive for the presence of heroin.

12.     After the arrest, I prepared the police reports and charges based upon the facts and circumstances available to me at the time of his arrest and left Mr. Rose in the Booking area of the Bridgeport Police Department.

13.     I was never contacted by the court nor heard anything regarding this arrest until Mr. Rose filed the federal complaint naming me.

Miguel Perez

Sworn and subscribed before me

this 12th day of March, 2003

Barbara Brazzel-Massaro
Commissioner of the Superior Court

**EXHIBIT**

tabbies

C

**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

IRVIN ROSE                          :
                                    :
            Plaintiff,              :        CIV. NO. 3:01CV90 (RNC)(DFM)
                                    :
      vs.                           :
                                    :
JOSEPH GANIM, ET AL                 :
                                    :
            Defendants              :        SEPTEMBER 3, 2002

## INTERROGATORIES AND PRODUCTION

## DEFENDANT'S REQUEST FOR INTERROGATORIES AND PRODUCTION

The Defendants, by and through their attorney, Barbara Brazzel-Massaro, state that the Plaintiff, **Irvin Rose**, is hereby notified to answer, under oath, these Interrogatories, as shown following within thirty (30) days of the time of service upon you, in accordance with the Federal Rules of Civ. Pro. et. seq.  These Interrogatories shall be deemed continuing so as to require supplemental answers if you obtain further information between the time the answers are served and the time of trial.

As used herein, the term "you" means you, yourself, or any of your agents, deputies, assignees, partners or associates.  It is intended by these Interrogatories to elicit information not merely within your own personal knowledge but also which is

BMF02055                                    1

obtainable by you, including information in possession of "anyone acting in your behalf", such as your attorney, investigator or their representatives.

Wherever the term "incident" is used, it refers to the incident referred to in your lawsuit unless the sense appears to be to the contrary.

1.    Please state name, address and social security number.

**ANSWER:**

2.    Please provide all addresses for the time period 1995 to the present.

**ANSWER:**

3.    Please provide the name, address, job description and dates of employment for any jobs you had during the time period of January 1, 1995 to the present.

**ANSWER:**

4.    Please provide the names and addresses of all witnesses you claim have any knowledge of the events alleged by you in your complaint.

**ANSWER:**

5.    Please provide each and every fact upon which you rely for the claim against Mayor Joseph Ganim.

   **ANSWER:**

6.    Please provide each and every fact upon which you rely for the claim against Thomas Sweeney.

   **ANSWER:**

7.    Please provide the name, address and field of expertise of any expert you have consulted or intend to use for the trial of this matter.

   **ANSWER:**

8.    Please indicate what relationship, if any, you have with Nicolas Stevens of Fairfield, Connecticut.

   **ANSWER:**

BMF02055

3

9.     Please provide the name of each Bridgeport police officers you came into contact with at the Bridgeport Police Department regarding this incident.

**ANSWER:**


10.    Please indicate the specific facts upon which you rely on your claims against Police Officer Torres.

**ANSWER:**


11.    Prior to January 11, 1998, had you ever met or had contact with Police Officer Torres?

**ANSWER:**


12.    Please indicate the specific facts upon which you rely on your claims against Police Officer Perez.

**ANSWER:**

13.    Prior to January 11, 1998, had you ever met or had contact with Police Officer

Perez?

**ANSWER:**


## PRODUCTION REQUEST

1.    Please provide all receipts or documents regarding the mailing or initiation of
your complaint in this matter.


2.    Please provide a copy of any policy or regulation you contend was violated by
Defendants Ganim, Sweeney, Perez and Torres.


3.    Please provide a copy of any written statements made or received by Plaintiff
concerning the subject of this action.


4.    Please provide a copy of any bills, expenses or other costs Plaintiff contends
were the result of the claims in his complaint.


5.    Please provide a copy of the final court disposition of this matter.


6.    Please provide a copy of the registration and insurance card for the
automobile you were driving on January 11, 1998.

BMF02055                                        5

THE DEFENDANTS

By: _Barbara B Massaro_
Barbara Brazzel-Massaro
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street - 2nd Floor
Bridgeport, CT  06604
Telephone #203/576-7647
Fed. Bar No. 05746

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 3rd day of September, 2002, to:

**Irvin Rose #78123**
**Northern Correctional Institution**
**287 Bilton Road**
**P.O. Box 665**
**Somers, CT  06071**

_Barbara B. Massaro_
Barbara Brazzel-Massaro
Commissioner of the Superior Court



EXHIBIT

D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IRVIN ROSE                    :

                    Plaintiff,    :        PRISONER
                              :        CIV. NO. 3:01CV90 (RNC)(DFM)
                              :
    vs.                       :
                              :
JOSEPH GANIM, ET AL           :
                              :
                    Defendants    :        MARCH 17, 2003

## AFFIDAVIT

I, James Viadero, being duly sworn, do hereby depose and say:

1.    I have been employed since January, 1985 as a Bridgeport police officer.

2.    I am presently in the position of Lieutenant.  I am assigned as the Director of Training for the Bridgeport police recruits and for ongoing re-certification for police officers in Bridgeport and other towns or municipalities within the State of Connecticut.

3.    I am responsible for the administration of the Police Training Academy located within the City of Bridgeport.  The training facility is certified and approved by the State of Connecticut, P.O.ST. (Police Officer Standard & Training Council).  This facility has been operating and certified during my entire career with the Bridgeport Police Department.

4.    The State of Connecticut establishes the courses required by police officers throughout the State and, in fact, reviews and approves the curriculum for the Bridgeport Police Academy.

5.    Bridgeport is approved to train and certify new officers as well as to re-certify officers as required by the State pursuant to Connecticut General Statutes §7-294.

6.    The Bridgeport Training Academy provides training for Bridgeport police officers as well as police officers in various department in Fairfield County.

7.    As part of the training, Bridgeport does provide a number of courses regarding the Connecticut Penal Code, Motor Vehicle Laws, Narcotic Laws, Laws of Arrests and Patrol Procedure.  Additionally, the officers serve a probationary period as new officers assigned to a field training officer to be certain that they can properly and legally apply the knowledge acquired in the classroom when on patrol.

8.    Additionally, officers attend courses on a continual basis for re-certification in accordance with Connecticut State law.

9.    The Bridgeport Police Academy has included all required courses and hours for officers like Miguel Perez and Peter Torres and, in fact, exceeds the laws required for new officers to be certified and for officers to be re-certified.

_____

James Viadero

Sworn and subscribed before me
this 14th day of March, 2003

_____
Barbara Brazzel-Massaro
Commissioner of the Superior Court



# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

IRVIN ROSE                        :
                                  :        **PRISONER**
      **Plaintiff,**          :        **CIV. NO. 3:01CV90 (RNC)(DFM)**
                                  :
  **vs.**                        :
                                  :
JOSEPH GANIM, ET AL               :
                                  :
      **Defendants**        :        **APRIL 22, 2004**

## AFFIDAVIT

I, Miguel Perez, being duly sworn hereby depose and say:

1.     I am over the age of eighteen and believe in the obligation of an oath.

2.     I am employed by the City of Bridgeport as a Police Officer and have been employed in this capacity since May, 1985.

3.     In January, 1998 I was assigned to a special patrol known as Community Policing or Community Service in which I patrolled the South End of Bridgeport and, in particular, the Housing Complex known as Marina Village.  During this assignment I wore the approved Bridgeport Police uniform and was assigned to a marked police car.

4.      On March 12, 2003, I submitted an affidavit concerning the arrest of Irvin Rose on January 11, 1998.

BMF04070                                1

5.    The stop of Mr. Rose was based upon a reasonable suspicion because it was obvious to me that Mr. Rose was attempting to hide himself from me and my fellow officer, Officer Torres.

6.    Both myself and Officer Torres were clearly identifiable police officers.

7.    Based upon my training and experience, it was obvious to me that this man, later identified as Irvin Rose, was attempting to avoid me by turning away and walking in the opposite direction.

8.    Based upon my training and observation, it was reasonable for me to stop Mr. Rose in an effort to question him.

9.    After the discussion with Mr. Rose, and his approval for me to enter a car he identified as his own, I discovered information which led me to reasonably believe that Mr. Rose had violated the laws of the State of Connecticut and to determine that he was untruthful in his responses to my inquiries because he did not provide me with his correct name.

10.    It was also reasonable for me to hold Mr. Rose and subject him to arrest for these violations.  As part of the arrest procedure, Mr. Rose was patted down for officer safety and heroin was discovered.

11.    Based upon the facts I was confronted with,  the attempt of Mr. Rose to evade me, his failure to truthfully respond to my questions, his obvious criminal violations, and the presence of narcotics on his persons that was discovered during a pat down

BMF04070                              2

for my safety, I believe it was objectively reasonable to arrest him and that there was sufficient probable cause for arrest.

Miguel Perez

Sworn and subscribed before me

this 22ND day of April, 2004

Barbara Brazzel-Massaro
Commissioner of the Superior Court